Mr. Chief Justice Sharkey
delivered the opinion of the court.
This bill was filed by the appellant to enjoin a judgment at law. It was decided at last January term, but on petition for that purpose a re-argument was granted. It has been again argued, mainly on questions of law, without reference to the merits of the case, as disclosed by the bill. But the complainant is entitled to a decision on the merits of the bill, and the substance is therefore carefully extracted.
It appears by the bill, that the complainant was for a time in partnership, in the mercantile business, with one James H. Stone. That firm was dissolved and another formed, composed of complainant and William W. Crook, which latter firm assumed the *643 responsibilities of the former. During the existence of these partnerships, the partners purchased goods of Thomas W. Poin-dexter & Co. at different times, and had a running account, which was kept open until March, 1839, when it was settled, as hereinafter stated. This account is made up of various bills of merchandise, purchased at different times, and credits for payments made. That at the time this dealing was commenced, Poindexter entered into an express verbal agreement to sell the complainant goods at an advance of twenty-five per cent, on the original cost, in consideration of which agreement the running account was commenced. But after the complainant entered 'into partnership with Crook another agreement was made, by-which they were to have goods at twenty per cent, advance. That some time in the year 1837, the firm of Boone & Crook was dissolved, and their account with Poindexter remained unsettled until March, 1839, when Poindexter visited complainant, then in feeble health, and presented to him a short statement of the account, at the amount of which complainant was greatly surprised, and told Poindexter that he had not given the proper credits, and refused to settle until the account could be examined, and he satisfied that their agreement had been complied with. To obviate his many objections, however, Poindexter stated, that his partners were dissatisfied, and he wished to satisfy them, and pledged himself that if complainant would close the account by note, a fair investigation should be had, and all errors corrected if discovered, and, as evidence,of his sincerity, executed a receipt to that effeet. A note was then executed for the balance of the account. That afterwards, to wit, in June, 1840, Poindexter, for the purposes of fraud, applied to complainant for a confession of judgment oh the note, alleging that his partners were dissatisfied, and that no execution should issue until a fair investigation should be had, and the matter amicably arranged ; that the judgment would operate as a lien, and his partners would be satisfied. On these promises he v/as induced to confess the judgment; that in violation of his promises to furnish an account, Poindexter had an execution levied on complainant’s property. The bill then proceeds to claim *644 several credits, and charges that money was furnished to Poin-dexter & Co. to purchase a bill of goods for which they were charged; that Poindexter & Co. withhold their books and invoices for fraudulent purposes, being well aware that complainant does not owe half the amount recovered by the fraudulent judgment. That complainant, “ C. W. Williams, is only liable in a writ of error.”
The several allegations of the bill merit some consideration before the subsequent proceedings are noticed. It is charged that Poindexter agreed to sell goods at a certain advance on costs, but it is no where charged that they violated that agreement. Poindexter promised to exhibit the accounts and invoices, and to correct errors if complainant would give his notes, but there is no allegation that complainant ever applied to see them. He is charged with having made a similar promise if complainant would confess judgment, and with a breach of that promise, but the complainant does not say that he has employed the proper means to obtain the account or invoices. It is also alleged, that complainant is entitled to certain credits, but it is not alleged, that he was not fully informed of these credits at the time he confessed judgment. But if the charges were even sufficient as grounds of relief, their foundation is swept away by the answer, which, in the most unqualified terms, denies any allegation that could furnish the least ground for relief. ^
The proof falls very far short in making out a case that would authorize a court of equity to interpose in behalf of complainant. Many witnesses were examined to prove the agreement between Poindexter and Boone, in relation to the terms or advance on the cost of the goods, but none of them prove positively that the dealing was to be continued on those terms. The answer admits that by agreement, one parcel of goods to the value of about $800, was sold at a profit of twenty-five per cent, and several of the witnesses speak of conversations between the parties on the subject, but whether they related to this particular sale, or to the general dealing, is not very certain. But admitting that such an agreement is established by proof, there is not a witness who speaks of its violation. Several of the witnesses speak of pay *645 ments, and the account exhibited by complainant, as well as by defendant, shows various payments. The proof in regard to the conversation that passed, when the note was given, is equally unsatisfactory in establishing a ground for relief; and, as regards the terms on which the judgment was confessed, there is no proof whatever that can militate against its fairness. Even on the complainant’s own showing, then, there is nothing which could justify the relief he asks, even if the judgment had been obtained against his consent, and certainly he ought to be held to a much stronger showing when he is seeking relief against a judgment by confession.
But if there could be a doubt on the merits of the case, as made out by the complainant, it is entirely swept away by the proof on the other side. Ray proves that-all'goods were sold to the complainant at the advance agreed upon, and that the agreement was observed in every particular. He also proves that the account exhibited by both parties is correct; that it contains a credit for every payment made, and that the balance struck, being the amount for which the note was given, was justly due. In addition to this, a letter from Boone to Poindexter was introduced, dated 23d April, 1840, in which he says that his conscience admonished him that Poindexter ought to have his money. It proceeds with many excuses, and as many promises of payment, but not one word of objection to the justness of the debt, tie surely would not have so written of an unjust demand. The propriety of the decree dismissing the bill cannot be doubted.
• But apart from the merits of the case, as disclosed by the bill and proof, it is still argued that the injunction should be retained, because the execution issued irregularly; that there is no valid judgment to support it; that it issued on the judgment of this court, affirming the judgment of the circuit court against Boone, and that such judgment of affirmance was void for want of jurisdiction. Suppose this were all so, does it follow that a court of chancery ought to interpose ? That would be converting it into a court for the correction of errors at law. If the execution issued on the judgment of this court, and was either void or *646 irregular, because of a void judgment, the remedy is ample at law. But the record presents no foundation of fact for this argument to rest on, and to prove this, it will be examined with care.
The bill speaks of the judgment of the circuit court entered by confession at June term, as being unjust. That is the judgment complained of. It mentions no other judgment. The prayer is for an injunction, “ and that .the execution emanating from the before mentioned judgment may be stayed, and that all process of execution emanating from the aforesaid judgment so by them obtained, may be stayed until,” &c. The bond for the injunction recites the same judgment, rendered in the circuit court of Tishemingo county, on the 8th of June, 1840, and the process of injunction suspends proceedings under the same judgment. In none of these proceedings is a judgment of affirmance of this court mentioned or alluded to. The bill of Boone does not inform us that there was such a judgment, nor do any of his exhibits. But suppose the case to be as stated, and that it was a proper one for equity cognizance, does it follow that the injunction ought to be retained? If there be no ground for interfering with the original judgment, as we have shown, then, even if the judgment of affirmance was void, there is nothing to complain of but the damages rendered on the judgment of affirmance. Under such a state of things, Boone would not have been entitled to an injunction beyond the amount of damages, and none would have been granted but on condition of the payment of the amount of the original judgment. Certainly, then, there can be no pretext for retaining the injunction for more than the damages; but as the bill does not complain of the damages, or inform us that damages have been awarded, there is no ground for retaining the injunction even that far.
It is thus shown that the complainant has not presented any such case as that supposed; does it otherwise appear? The answer states that Boone obtained a writ of error and gave a bond for a supersedeas which issued, but took no further steps for some time, and ultimately the record was brought up by the defendant, and on his motion the judgment was affirmed with *647 damages; that an execution was sued out, which was levied and the sale advertised, but on the day of sale the sheriff postponed it, and Boone, on the day after, to which time the postponement was made, obtained an injunction. This allegation is not responsive to the bill, and of course could not be taken as true for the defendant, but it is sustained by proof this far: It appears by an exhibit certified by the clerk of the circuit court, that a writ of error was prayed for and issued, and that a bond was taken, and supersedeas issued. But there is no proof that the judgment was affirmed and damages awarded; such a fact should be established by the certificate of the clerk, on a transcript from our own records, but there is no such thing in the record, and no other proof of such fact, except the statement in the answer. The points then on which the re-argument was prayed, and which have been argued, are based upon the disclosures in the answer, and on the most important one there is no proof whatever; to wit, that there was a judgment in this court, and that the execution issued on such judgment.
But a motion is also made and submitted with the merits, to vacate the judgment of affirmance, and the case has been argued on both sides, as though the record really showed that the judgment had been affirmed with damages, and an execution issued on it, and perhaps in point of fact this is true. And whilst our right to decide might otherwise be well questioned, we take it for granted, so far as the motion is concerned, that the facts are as they are conceded to be. Then the question is, was the judgment of this court void? A judgment is void only where the court has not jurisdiction either of the subject matter or parties. But this court had jurisdiction of both. Jurisdiction is to be determined, as regards the nature of the thing in contror versy, by the character of the suit. The defence which may exist has no influence in settling the question of jurisdiction. One statute may give a right, and that determines the jurisdiction, although another may make a certain thing a bar to that right. This was a question of error in the judgment of the circuit court, a matter confessedly within the jurisdiction of this court. Does the statute relied on exclude the jurisdiction in this *648 particular case? If the jurisdiction is in all cases conferred by law, there must be some special or particular law excluding it in a case like this, or it is not taken away. The statute relied on for this purpose is found in a proviso to the act of 1830, which changed the practice in regard to writs of error. It authorized the clerk to issue the writ on the filing of the record, and contains two provisos; “first, that no writ of error shall issue unless within three years,” &c.; and second, “ that no writ of error shall issue to reverse any judgment by confession,” using the same language in both cases. This was not the origin of the provision; it was contained in the act of 1822, which only conferred power on the judges to award writs of error. That act says, “A judgment on confession shall be equivalent to a release of errors.” Revised Code, 12o. This last act was directory to the clerk merely, and if it takes away the jurisdiction of the appellate court on a judgment confessed, it must do the same when three years have elapsed. But it does not do this : a writ of error may be sued out after three years, and if the statute be not pleaded, the appellate court may proceed and render judgment. - In both cases, then, it does nothing more than give the defendant in error a bar to the writ of error. It was intended for his benefit, and he may waive it. It is not a law of public policy. The English statute of limitations is substantially the same. It declares that no judgment shall be reversed, unless the writ of error be brought and prosecuted with effect within twenty years, and yet it has never been held to deprive the appellate court of jurisdiction after that time; on the contrary, it must be pleaded; and if not pleaded, the court proceeds without regard to it. 3 S. & M. 423. To test the force of the language employed by the statute still further. The statute of frauds uses precisely the same language, “ No action shall be brought whereby to charge any executor upon any special promise,” &c. Now suppose an executor be sued upon such promise, or a third person be sued on a promise to pay the debt of another, or upon a marriage contract, or contract for the sale of lands, none of them being reduced to writing, and the defence is not made, is the judgment of the court void ? Certainly not, *649 nor is it voidable, because by not making the defence, the party waives it. The statute of limitations uses the same prohibitory terms, and yet if it be not pleaded, the judgment is not void, but it is valid, and other cases might be mentioned of a similar kind. Jurisdiction, when once given, is not to be taken away by implication.
But the case of Stamps v. Newton, 3 How. 34, is relied on, as sustaining the position of counsel. The court there struck a case from the docket, after a forthcoming bond had been given. The court then challenged its own jurisdiction. In that case it was manifest that the writ of error ought not to have been sued out; but the particular mode of getting rid of it does not seem to have been the subject of much consideration. The correct judgment would have been, that the writ of error be quashed. Similar cases have since occurred, but the question of jurisdiction does not seem to have entered into the consideration. 4 How. 9; 5 Ib. 188. The latter case virtually sustains the validity of a judgment of reversal, after a bond forfeited. In the case of Davis v. Jordon, 5 How. 295, the forfeiture of a bond is considered as a bar only. Suppose the bond has been really forfeited, but that fact is not known to the clerk, and this may often happen, as the bond may be forfeited long before the return day of the execution, is it so vitally defective as to deprive the appellate court of jurisdiction 1 it would seem not, for the clerk has nothing before him, by which he can know that the writ ought not to issue. In the case of Puckett v. Graves, 6 S. & M. 390, the forfeiture of the forthcoming bond is spoken of only as a bar to the writ of error.
The decree is affirmed, and the motion overruled.